# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **FREDDIE EUGENE CASEY,** | |
| Plaintiff, | Case No. 7:15CV00689 |
| v. | **OPINION** |
| **HAROLD W. CLARKE, ET AL.,** | By: James P. Jones |
| | United States District Judge |
| Defendants. | |

*Freddie Eugene Casey, Pro Se Plaintiff; Jessica J. Berdichevsky, Office of the Attorney General, Richmond, Virginia, for Defendants Clarke, Large, Messer, Barton, Mead, and Young; Carlene Booth Johnson, Perry Law Firm, Dillwyn, Virginia, for Defendant Wood.*

Plaintiff Freddie Eugene Casey, a Virginia inmate proceeding pro se, brought this civil rights action under 42 U.S.C. § 1983, alleging that prison officials violated his constitutional rights by maintaining him in restraints during his hospitalization and related transportation. He also sues a prison nurse for deliberate indifference to injuries caused by the restraints. After careful review of the defendants' dispositive motions and Casey's submissions, I conclude that the nurse's Motion to Dismiss must be granted and that Casey is barred from pursuing his other § 1983 claims because he failed to exhaust his administrative remedies before filing this action.

I.

On November 26, 2014, at Red Onion State Prison ("Red Onion"), Casey complained of ongoing pain in his right side and shortness of breath and was moved to the infirmary. A nurse determined that air was not entering Casey's lung. Officers placed him in handcuffs and shackles, connected to a waist chain, and transported him to Mountain View Hospital in Norton, Virginia, where he was evaluated and treated by a doctor and admitted for further treatment and observation. Casey remained in full restraints at all times while outside the prison. When he asked the officers to remove them, they refused, saying that the restraints complied with Red Onion security policy. Only when the doctor needed Casey to raise his hands above his head to conduct a procedure did the officers temporarily release the handcuffs from the waist chain. Casey alleges that the restraints caused wounds to both wrists.

The hospital doctor referred Casey to a lung specialist at the Medical College of Virginia/Virginia Commonwealth University Medical Center ("MCV") in Richmond for further evaluation. Casey returned to Red Onion on November 30 to await an appointment at MCV. He "showed [Nurse Wood] the (2) inch by (3) inch wounds on both [his] wrists but she said they needed no treatment because they were scabbed nicely." (Compl. 4, ECF No. 1.) The next morning, Casey asked another nurse to treat his wrists, and the nurse agreed to do so. This nurse

later refused, stating that treatment would interfere with the restraints necessary to transport Casey to MCV.

On December 2, after a seven-hour ambulance ride in full restraints, Casey was admitted to MCV for testing. The nurses and doctors there were allegedly "appalled" at the sores the restraints had caused on his wrists and treated and bandaged them. (*Id.*) Casey's treating physicians at MCV decided to operate on his lung and place a drain tube in it. On December 13, 2014, Casey was released from the hospital and spent several weeks at Greensville Correctional Center ("Greensville") in the infirmary. Greensville medical staff members were also allegedly "appalled" by the "huge sores" on Casey's wrists and took pictures of them. The surgery was successful, and Casey was returned to Red Onion in January 2015. A nerve specialist allegedly confirmed later in 2015 that Casey had suffered nerve damage to his hands.[1]

Casey filed his § 1983 Complaint in December 2015, alleging due process and deliberate indifference claims against the defendants under Eighth and Fourteenth Amendments. He seeks monetary and injunctive relief.

Defendant Wood has filed a Motion to Dismiss, arguing that Casey's allegations fail to state a § 1983 claim against her. Other defendants have filed a Motion for Summary Judgment on the ground that Casey failed to exhaust

---

[1] Casey was transferred to River North Correctional Center in August 2015.

available administrative remedies before filing this action. Casey has responded to both motions, making these matters ripe for consideration.

## II.

A motion to dismiss tests the legal sufficiency of a complaint. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-63 (2007). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In conducting its review, a court must accept as true those allegations of fact that are well pleaded, but "need not accept plaintiff's unwarranted deductions, footless conclusions of law, or sweeping legal conclusions cast in the form of factual allegations." *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (affirming dismissal of action) (internal quotation marks and citations omitted).

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). An Eighth Amendment claim regarding medical care requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the defendant was deliberately indifferent to that need. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A serious medical need in this context is "one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted). To prove deliberate indifference, the plaintiff must state facts indicating that the defendant "actually [knew] of and disregard[ed] an objectively serious condition, medical need, or risk of harm." *De'lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

The "deliberate indifference standard is not satisfied by a showing of mere negligence, a mere error of judgment or inadvertent failure to provide medical care, or mere disagreement concerning questions of medical judgment." *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (unpublished) (internal quotation marks and citations omitted). Prison personnel are entitled to rely on the medical judgment of an inmate's treating physician to determine what treatment is medically required. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)).

As stated, Casey alleges that when he returned to Red Onion after five days in metal restraints while at the hospital in Norton, he showed Wood the "(2) inch by (3) inch wounds on both [his] wrists." (Compl. 4, ECF No. 1.) Nurse Wood allegedly said "they needed no treatment because they were scabbed nicely." (*Id.*) Taking these allegations as true, I cannot find that Casey has stated facts showing

-5-

Case 7:15-cv-00689-JPJ-RSB   Document 33   Filed 12/02/16   Page 5 of 14   Pageid#: 142

that the nurse knew of any serious medical need for treatment of his wrists when she examined him on November 30, 2015.

Casey simply has not alleged facts showing that his wrist injuries presented a serious medical need for treatment that day. He alleges that during the hospital stay, the handcuffs "cut off" circulation in his hands (*Id.* at 2), the cuffs "cut[ ] into" him (*Id*. at 3), his hands were visibly swollen at times, and he complained repeatedly to officers about the discomfort of the restraints. However, he does not describe any active bleeding, swelling, bone displacements, or signs of infection visible to Wood back at the Red Onion infirmary.

Similarly, Casey fails to show that Wood knew failure to treat his wrist injuries placed him at an excessive risk of serious harm. Indeed, he does not identify any particular treatment necessary or even advisable for his wrist injuries that night or state how the lack of treatment at that time caused him any pain or exacerbated the harm to his wrists while in the infirmary. He apparently believes that someone should have bandaged his wrists before he was transported across the state in restraints the next morning. He does not allege, however, that Wood was involved in medically assessing his condition or need for treatment in preparation for that trip.

Casey compares Wood's assessment of his injuries on November 30 to the reactions other health professionals allegedly had upon seeing his wrist injuries

-6-

after the seven-hour ambulance ride to MCV or hearing his complaints about nerve damage. Yet, he does not allege that Wood witnessed the same symptoms that Casey later showed or related to his other treating professionals.

Casey disagrees with Wood's diagnosis and treatment decisions on the one occasion when she examined him. Such accusations of medical negligence and disagreements with medical judgments are simply not actionable under § 1983. *See Estelle*, 429 U.S. at 106 (finding that alleged "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). Accordingly, I must grant Wood's Motion to Dismiss.

### III.

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must take the non-movant's evidence as true and draw "all justifiable inferences" from the evidence in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To withstand a summary judgment motion, the non-movant must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Id.* at 249-50. "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of

-7-

Case 7:15-cv-00689-JPJ-RSB   Document 33   Filed 12/02/16   Page 7 of 14   Pageid#: 144

evidence' in support of [the non-movant's] case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (citation omitted).

The Prison Litigation Reform Act ("PLRA"), among other things, provides in 42 U.S.C. § 1997e(a) that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. This exhaustion requirement is "mandatory." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). It "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006) (finding § 1997e(a) requires inmate's "full use of the prison grievance process" because "proper exhaustion" of available administrative remedies furthers statute's goals). Regardless of whether the particular form of relief the inmate desires is available under the administrative procedure, he must, nevertheless, exhaust properly all available remedies under that procedure before bringing a civil action in this court. *Porter*, 534 U.S. at 524.

The defendants bear the burden of proving the affirmative defense that Casey failed to exhaust available administrative remedies regarding his claims

-8-

Case 7:15-cv-00689-JPJ-RSB   Document 33   Filed 12/02/16   Page 8 of 14   Pageid#: 145

before filing suit. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Once they have done so, Casey may yet escape summary judgment under § 1997e(a) if he states facts showing that the remedies under the established grievance procedure were not "available" to him. *Ross*, 136 S. Ct. at 1859 (noting that circumstances making prison grievance procedures unavailable "will not often arise"). Generally, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Operating Procedure 866.1 is the written administrative remedies procedure that Virginia Department of Corrections inmates must follow to comply with § 1997e(a). Under OP 866.1, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally. He must normally document this informal resolution effort by completing an informal complaint form and submitting it to prison staff, who will log his submission on the computer and issue him a receipt. Prison staff will then provide the inmate with a written response on the bottom of the informal complaint form and return it to him within fifteen days. The inmate can then initiate the next step under OP 866.1 — a regular grievance, with the informal complaint attached. If the inmate does not receive a response to his informal complaint within 15 days, he may,

nevertheless, file a regular grievance form, attaching his receipt as evidence that he filed an informal complaint.

A regular grievance must be filed within 30 days of the occurrence about which it complains. Only one issue may be addressed per grievance. The regular grievance form "should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (Messer Aff. Enclosure A at 13, ECF No. 29-1.) If the inmate has been transferred to a different prison facility, he "should submit the informal complaint and subsequent grievance to the facility where the issue originated." (*Id.* at 14.)

Once a regular grievance is properly and timely filed, the grievance coordinator should log the grievance on the VDOC computer data base and issue the inmate a receipt within two days. The grievance coordinator will also determine the course of investigation for the grievance, whereafter the warden or his designee will send the inmate a Level I response. If the responding official determines the grievance to be "unfounded," for full exhaustion, the inmate must appeal that holding to Level II, the regional administrator, and in some cases, to Level III. Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the grievance for appeal to the next level of review.

In his verified Complaint, Casey alleges that on February 23, 2015, he filed an informal complaint about the injuries to his wrists from being kept in restraints while hospitalized in November 2014. He received a receipt within two days. On March 6, 2015, an officer responded, stating that Red Onion policy required all inmates leaving Red Onion to be held in full restraints. Casey alleges that he completed a regular grievance form that same day and allegedly mailed it and the informal complaint to the Warden's office. He did not receive a receipt for the grievance. The Red Onion grievance coordinator states that she has no record of receiving any regular grievance from Casey about his hospitalization in November 2014.

On March 22, Casey allegedly sent a copy of the regular grievance to the Virginia Department of Corrections ("VDOC") regional director, stating that he had not received a receipt for his regular grievance. On March 29, Casey allegedly filed an informal complaint about not receiving a receipt for his regular grievance that went unanswered. Both copies of Casey's regular grievance were returned on May 8, 2015, from the VDOC offender ombudsman service office, indicating that this office does not "address grievances that ha[ve] not been responded to at the institutional level." (Compl. 6, ECF No. 1.)

In their Motion for Summary Judgment, the defendants contend that Casey's § 1983 complaint must be dismissed under § 1997e(a), because he did not properly

-11-

Case 7:15-cv-00689-JPJ-RSB   Document 33   Filed 12/02/16   Page 11 of 14   Pageid#: 148

file a regular grievance about being maintained in restraints during his November 2014 hospitalization. In response to the defendants' motion, Casey contends that he did "everything possible to have [his] issues resolved at the administrative levels with no success [and that] [a]ny failure to exhaust remedies was not due [to] a lack of diligence" on his part.[2] (Pl.'s Resp. 2, ECF No. 32.) The record does not support this conclusory contention.

First, from Casey's own allegations, he waited too long to initiate an informal complaint or a regular grievance. His hospitalization in restraints occurred in late November 2014. He waited until February 25, 2015, nearly three months later, to file his informal complaint and grievance. OP 866.1 allowed him to mail administrative remedy forms from Greensville to Red Onion, where his

---

[2] Casey also states that he "would like an opportunity to provide additional evidence to support [his] claim that [he] did submit grievances but they were simply ignored or destroyed, knowing that this would be their defense in any subsequent civil action." (Pl.'s Resp. 2, ECF No. 32.) Immediately after the defendants filed their motion, the court notified Casey:

> The Court will give Plaintiff twenty-one (21) days from the date of this Notice to submit any further counter-affidavits or other relevant evidence contradicting, explaining or avoiding Defendant[s'] evidence.
> . . . .
> If Plaintiff wishes to continue with the case, it is necessary that Plaintiff respond in an appropriate fashion.

(Notice 1, ECF No. 30.) Casey has not submitted any further evidence on the exhaustion issue and has not filed a motion requesting additional time to do so. Moreover, given the clear notice he received about when to submit his evidence in response to the defendants' motion and the conclusory nature of the "additional evidence" he seeks to submit, I conclude that the defendants' motion is ripe for disposition.

grievance arose. Casey offers no justification for failing to do so within the time limits under the grievance procedure.

Second, even assuming Casey filed a regular grievance on March 6, 2015, as he alleges, he also knew within two days that he had not received a receipt as required. This fact put him on notice to investigate whether the grievance coordinator had actually received and logged his regular grievance for investigation. Yet, instead of immediately filing an informal complaint at Red Onion about his lack of a receipt, Casey waited two weeks and then sent a copy of his grievance to a VDOC administrator who was not assigned to address initial grievances.

For the stated reasons, I cannot find that Casey properly exhausted his administrative remedies before filing this action or that he has alleged facts showing that the Red Onion grievance procedure was unavailable to him in any respect. Furthermore, I find it clear from the record that Casey no longer has an available administrative remedy regarding the defendants' actions in November 2014. Accordingly, I will grant the defendants' Motion for Summary Judgment and dismiss Casey's claims against them with prejudice under 42 U.S.C. § 1997e(a).[3]

---

[3] In his later submissions, Casey agrees with the defendants that Harold Clarke, the director of the VDOC, had no involvement in the actions of which Casey complains. I find this to be an additional ground to dismiss Casey's case with prejudice.

-13-

Case 7:15-cv-00689-JPJ-RSB   Document 33   Filed 12/02/16   Page 13 of 14   Pageid#: 150

A separate Final Order will be entered herewith.

DATED: December 2, 2016

/s/ James P. Jones
United States District Judge
